JOSEPH W. COTCHETT (SBN 36324)
jcotchett@cpmlegal.com
BRIAN DANITZ (SBN 247403)
bdanitz@cpmlegal.com
KARIN B. SWOPE (*Pro Hac Vice forthcoming*)
kswope@cpmlegal.com
GIA JUNG (SBN 340160)
gjung@cpmlegal.com
VASTI S. MONTIEL (SBN 346409)
vmontiel@cpmlegal.com
PIERCE H. STANLEY (SBN 352152)
pstanley@cpmlegal.com
**COTCHETT, PITRE & McCARTHY, LLP**
San Francisco Airport Office Center
840 Malcolm Road
Burlingame, California 94010
Telephone:     (650) 697-6000
Facsimile:     (650) 697-0577

*Attorneys for Plaintiffs Corey Martin and*
*Tyshaun Butler and the Proposed Class*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN JOSE DIVISION

| | |
|---|---|
| **COREY MARTIN** and **TYSHAUN BUTLER**, on behalf of themselves and others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> **APPLE INC.**, a California Corporation, <br><br> Defendant. | CASE NO: <br><br> **CLASS ACTION COMPLAINT FOR:** <br><br> 1. **VIOLATION OF THE CALIFORNIA FALSE ADVERTISING LAW;** <br> 2. **VIOLATION OF THE CALIFORNIA CONSUMER LEGAL REMEDIES ACT;** <br> 3. **VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW;** <br> 4. **FRAUD AND DECEIT;** <br> 5. **NEGLIGENT MISREPRESENTATION;** <br> 6. **BREACH OF CONTRACT;** <br> 7. **BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY; AND** <br> 8. **UNJUST ENRICHMENT** <br><br> <u>**DEMAND FOR JURY TRIAL**</u> |

*Class Action Complaint*

## **Table of Contents**

Page

I.     INTRODUCTION ............................................................................................. 1

II.    THE PARTIES ................................................................................................ 4

       A.    PLAINTIFFS ........................................................................................ 4

       B.    DEFENDANT ....................................................................................... 6

       C.    AGENTS, AIDERS, ABETTORS, AND CO-CONSPIRATORS ........................... 6

III.   JURISDICTION AND VENUE ....................................................................... 6

IV.    INTRADISTRICT ASSIGNMENT ................................................................. 7

V.     FACTUAL BACKGROUND ........................................................................... 7

       A.    APPLE INTRODUCES "APPLE INTELLIGENCE" FUNCTIONALITIES .......... 7

       B.    MEDIA BUZZ AMPLIFIED APPLE'S MISREPRESENTATIONS...................... 8

       C.    APPLE ANNOUNCES "APPLE INTELLIGENCE" NOW AVAILABLE
             ACROSS ALL DEVICES ......................................................................... 9

       D.    APPLE'S EXPANSIVE SIRI PROMISES ................................................. 12

       E.    APPLE FAILED TO DELIVER THE PROMISED SIRI AI FUNCTIONS .......... 13

       F.    APPLE FINALLY ACKNOWLEDGES ITS FAILED ROLLOUT ...................... 14

VI.    CLASS ACTION ALLEGATIONS................................................................ 15

VII.   CHOICE OF LAW: DESIGNED BY APPLE IN CUPERTINO, CALIFORNIA..... 17

VIII.  CLAIMS FOR RELIEF.................................................................................. 19

       FIRST CLAIM FOR RELIEF .......................................................................... 19
       Violation of the California False Advertising Law
       Cal. Bus. & Prof. Code § 17500, et seq.

       SECOND CLAIM FOR RELIEF ...................................................................... 21
       Violation of the California Consumer Legal Remedies Act
       Cal. Civ. Code § 1750, et seq.

       THIRD CLAIM FOR RELIEF.......................................................................... 23
       Violation of California's Unfair Competition Law
       Cal. Bus. & Prof. Code § 17200, et seq.

       FOURTH CLAIM FOR RELIEF....................................................................... 28
       Fraud and Deceit

       FIFTH CLAIM FOR RELIEF .......................................................................... 30
       Negligent Misrepresentation

SIXTH CLAIM FOR RELIEF ........................................................................ 30
Breach of Contract

SEVENTH CLAIM FOR RELIEF ................................................................. 31
Breach of Implied Warranty of Merchantability

EIGHTH CLAIM FOR RELIEF ..................................................................... 32
Unjust Enrichment

**IX.      PRAYER FOR RELIEF** ........................................................................ **32**

**X.       DEMAND FOR JURY TRIAL** ........................................................... **34**

1    Plaintiffs **COREY MARTIN** and **TYSHAUN BUTLER** ("Plaintiffs," or "Martin" and

2   "Butler"), on behalf of themselves and all others similarly situated (the "Class" and "Class

3   Members" as defined below) bring this class action complaint against **APPLE INC.** ("Apple" or

4   "the Company"), alleging as follows:

5   **I.    INTRODUCTION**

6        1.    This action arises from Apple's materially false and misleading statements relating

7   to Apple's artificial intelligence ("AI") suite of features, branded as "Apple Intelligence"—in

8   particular, promised AI enhancements to **Siri**, Apple's software-based virtual assistant. The Siri AI

9   makeover was the centerpiece of the promised Apple Intelligence platform and was touted by the

10  Company in advertisements and other public statements in an effort to increase sales of the iPhone

11  16 and spur iPhone upgrades. Those promises were false and nearly a year after they were made,

12  Siri's touted "In-App" and "On-Screen" AI functions still do not exist.



***Screenshot showing Apple's representations of new Siri functionalities***

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

2.     In the summer of 2024, Apple launched a pervasive marketing campaign to promote its latest iPhone 16 model. The marketing campaign highlighted the iPhone 16's groundbreaking AI features, with AI enhancements to Siri marketed as a functioning breakthrough innovation which was the lynchpin of the new iPhone's appeal.

3.     Specifically, Apple promised that Apple Intelligence functions as a groundbreaking on-device AI system that can handle advanced tasks such as rewriting emails in different tones, summarizing documents, generating images, and delivering multi-step Siri task functionality. This drove unprecedented excitement in the market and was a major part of Apple's ongoing effort to convince consumers to upgrade their current device to an iPhone 16. It also served to distinguish Apple from its competitors who otherwise were seen to be ahead of Apple in the competitive generative AI space.

4.     In aggressively promoting these new features, Apple promised a revolutionary product that would change the way that consumers use their phones. Apple's advertising and promotion regarding the capabilities of Apple Intelligence saturated the internet, television, and other media, creating consumer expectation that these features would be available upon the new iPhone's release.

5.     Through advertisements, keynote presentations, and official product pages, Apple represented that these AI capabilities were present at launch.

6.     Apple's decision to base its marketing campaign on the touted functionality of Apple Intelligence and the AI-enhanced version of Siri was a highly profitable one for the Company. Apple promoted and released five new iPhone models—the iPhone 16, 16 Plus, 16 Pro, 16 Pro Max, and 16e—which are priced from $699 to upwards of $1,199 before upgrades.

7.     From June 2024 through March 2025, Apple touted the new AI features as a key selling point for all of these devices which otherwise lacked major technical changes. As a result, consumers upgraded from an iPhone 15 or from a competitor brand at a premium *solely* for use of Apple's promised AI functionalities, that—as it turns out—did not exist.

8.     Apple falsely promised "In-App" and "On-Screen" AI functions that would enable Siri to integrate information from all apps on the iPhone and that this would create a new AI driven

personalized experience. Apple represented that:

- "Siri will be able to deliver intelligence that's tailored to the user and their on-device information. For example, a user can say, 'Play that podcast that Jamie recommended,' and Siri will locate and play the episode, without the user having to remember whether it was mentioned in a text or an email. Or they could ask, 'When is Mom's flight landing?' and Siri will find the flight details and cross-reference them with real-time flight tracking to give an arrival time."[1]

- "With Apple Intelligence, Siri will be able to take hundreds of new actions in and across Apple and third-party apps. For example, a user could say, 'Bring up that article about cicadas from my Reading List,' or 'Send the photos from the barbecue on Saturday to Malia,' and Siri will take care of it."[2]

- "With Apple Intelligence, Siri can draw on a user's personal context to answer questions."[3]

9.     Plaintiffs and other Apple customers reasonably relied on these and other statements about the enhanced AI capabilities that would be available on the Affected Devices, including promised "In-App" and "On-Screen" AI which were material to the decision to purchase but for Apple's misrepresentations and omissions into believing the Products possessed certain AI qualities, capabilities, and features, they simply do not have. As a result, Apple charged consumers for Products they would not have purchased, or at least not at its premium price, had the advertising been honest

10.     As demonstrated by a litany of social media posts on Twitter/X, Reddit, and YouTube, as well as on technology reviewers' online comment sections, iPhone 16 purchasers were disappointed and confused about Apple's bait and switch tactics. Consumers complained that they purchased the phone believing that Apple Intelligence was fully functional, only to discover after

---

[1] Apple Newsroom, *Introducing Apple Intelligence, the personal intelligence system that puts powerful generative models at the core of iPhone, iPad and Mac*, APPLE (June 10, 2024) https://www.apple.com/newsroom/2024/06/introducing-apple-intelligence-for-iphone-ipad-andmac/.
[2] *Id.*
[3] Apple Newsroom, *Apple Intelligence is available today on iPhone, iPad, and Mac*, APPLE (October 28, 2024) www.apple.com/newsroom/2024/10/apple-intelligence-is-available-today-oniphone-ipad-and-mac.

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

purchasing the new device that the touted functionality was delayed, incomplete, impossibly buggy and never implemented by Apple.[4]

11.    Adding insult to injury, enraged consumers also complained that the limited AI features that Apple eventually attempted to roll out in iOS updates, resulted in excessive battery drain and device overheating.[5]

12.    On March 7, 2025, Apple finally acknowledged that the touted Apple Intelligence features, including the well-publicized Siri enhancements that were promoted to fuel media buzz and consumer excitement, did not exist at the time of promotion and still do not exist today. Under pressure from users demanding refunds and threatening to boycott Apple products, Apple admitted to the delays and estimated that if these features were to materialize, it would not be until 2026 at the earliest that the phones will achieve their promised functionality—two years after Apple's aggressive marketing campaign set this public relations charade in motion.

13.    Plaintiffs are two of those customers and bring this lawsuit on behalf of themselves and similarly situated Class Members, purchasers of Apple's iPhone 16, 16 Plus, 16 Pro, 16 Pro Max or 16e (collectively, the "Affected Devices"). Defendant advertised that these Affected Devices would be equipped with Siri "In-App" and "On-Screen" functions among other Apple Intelligence features, and they were not.

14.    As discussed herein, Apple includes a California choice-of-law provision in the Software License Agreement accompanying its iOS software. Plaintiffs accordingly allege claims under California law.

## II.    THE PARTIES

### A.    PLAINTIFFS

15.    Plaintiff **COREY MARTIN** is a business student who resides in Castaic, California. Martin pre-ordered and purchased his iPhone16 Pro from his cellular phone carrier AT&T's website on or about September 13, 2024.

---

[4] *See, e.g.*, Apple Support Community, *Why is the Apple Intelligence not included on my iPhone 16?* (Oct. 2, 2024), https://discussions.apple.com/thread/255784851.
[5] *See, e.g.*, Apple Support Community, *Experiencing software issues with iPhone 16 Pro Max*. (Oct. 18, 2024), https://discussions.apple.com/thread/255807938.

16.    Martin decided to purchase a new iPhone 16 Pro after watching the keynote of Apple's Worldwide Developers' Conference and after hearing about the new iPhone 16 Apple Intelligence AI-enabled capabilities. In particular, he heard that the functionality would include new Siri voice assistant AI capabilities. Martin bought the phone specifically relying on these statements and relying on industry blog posts and press coverage of Apple's announcement, paying a premium to enjoy the benefits of Siri AI-augmented personalization and new automated assistant functionalities. Unbeknownst to Martin, Apple's statements about the functionality of the AI capabilities available on the iPhone 16 were materially false and misleading. But for Apple's materially false and misleading promotion of the iPhone 16 Apple Intelligence AI-enabled capabilities, Martin never would have purchased or would not have paid as much for his iPhone 16 Pro.

17.    Plaintiff **TYSHAUN BUTLER** is an entrepreneur who resides in Pittsburg, California. Butler preordered and purchased two iPhones from Apple, a 16 Pro Max and a 16 Plus model on or about September 13, 2024.

18.    Butler decided to purchase his iPhone 16 Pro Max and 16 Plus after receiving several marketing emails from Apple, seeing ads for Apple Intelligence equipped iPhone 16 models on Instagram, and seeing advertisements for Apple Intelligence-enabled iPhone 16s at brick-and-mortar Apple stores. In particular, he heard that the functionality included new Siri voice assistant AI capabilities, including a new smart button feature. Butler bought the phone specifically relying on these statements, paying a premium to enjoy the benefits of Siri AI-augmented personalization and new automated assistant functionalities, such as advanced calendaring and messaging capabilities that would be useful to him in his business as a private barber. Unbeknownst to Butler, Apple's statements about the functionality of the AI capabilities available on the iPhone 16 were materially false and misleading. But for Apple's materially false and misleading promotion of the iPhone 16 Apple Intelligence AI-enabled capabilities, Butler never would have purchased or would not have paid as much for his iPhone 16 Pro Max or iPhone 16 Plus model.

19.    In addition to the absent Apple Intelligence functionalities, both of Butler's iPhones routinely experienced overheating in addition to having repetitive screen glitches or momentary

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

unresponsive pauses that degrades the overall performance of his phones.

**B.    DEFENDANT**

20.    Defendant **APPLE, INC**. is a California incorporated company headquartered at 1 Infinite Loop, Cupertino, California 95014. The Company designs, manufactures, and markets mobile communication and media devices, including the iPhone line of smartphones. Apple also sells a variety of software, services, and accessories for use with iPhones.

21.    Defendant continues to market and sell the Affected Devices and has not taken appropriate action to make clear the false and misleading nature of their promotion of Apple Intelligence on the Affected Devices.

**C.    AGENTS, AIDERS, ABETTORS, AND CO-CONSPIRATORS**

22.    At all times herein mentioned, Defendant, and any other Defendants currently unknown, each were the agents, servants, employees, partners, aiders and abettors, co-conspirators, and/or joint venturers of each of the other Defendants named herein and were at all times operating and acting within the purpose and scope of said agency, service, employment, partnership, enterprise, conspiracy, and/or joint venture, and each Defendant has ratified and approved the acts of each of the remaining Defendants. Each of the Defendants aided and abetted, encouraged, and rendered  substantial assistance to the other Defendants in breaching their obligations to Plaintiffs and Class Members, as alleged herein.

23.     In taking action to aid and abet and substantially assist the commission of these wrongful acts and other wrongdoings complained of, as alleged herein, each Defendant acted with an awareness of his/her/its primary wrongdoing and realized that his/her/its conduct would substantially assist the accomplishment of the wrongful conduct, wrongful goals, and wrongdoing.

**III.    JURISDICTION AND VENUE**

24.    This Court has original jurisdiction over this action under 28 U.S.C. § 1332(d)(2). The matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs. At least one proposed Class Member is a citizen of a state different from Apple.

25.    This Court also has personal jurisdiction over Apple, which is incorporated under California law and is headquartered in Cupertino, California in Santa Clara County.

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

26.     Venue is proper in this Court under 28 U.S.C. § 1391. Apple resides in, and has its most significant contacts with, the Northern District of California. A substantial part of the events or omissions giving rise to the claims alleged herein occurred in this judicial district.

**IV.    INTRADISTRICT ASSIGNMENT**

27.     Assignment to the San Jose Division is appropriate under Local Civil Rule 3-2(c) and (e). A substantial part of the events or omissions which give rise to the claims alleged herein occurred at Apple's headquarters, which is located in Santa Clara County.

**V.    FACTUAL BACKGROUND**

28.     Leading up to the 2024 marketing campaign based on Apple Intelligence, Apple knew that its customer base was increasingly interested in generative AI features.

29.     On June 10, 2024, Apple announced at its annual Worldwide Developer Conference ("WWDC") a release of its artificial intelligence offering, "Apple Intelligence."[6]

**A.    APPLE INTRODUCES "APPLE INTELLIGENCE" FUNCTIONALITIES**

30.     At the WWDC, Apple touted Apple Intelligence as a new grouping of generative AI tools on its upcoming lineup of not just phones but other Apple devices—including laptop and desktop computers and tablets—suggesting that soon, all new Apple products would come natively enabled with Apple Intelligence and improved AI capabilities for Siri that were associated with the roll-out of that product suite.



*Screenshot from Apple's official website announcing Apple Intelligence, June 10, 2024*

---

[6] Apple Newsroom, *supra* note 1.

### B.    MEDIA BUZZ AMPLIFIED APPLE'S MISREPRESENTATIONS

31.    Apple's announcements were amplified by the media and Apple's WWDC promises spread like wildfire across tech blogs and the Internet. *TechCrunch* cited the promise of Apple Intelligence for consumers by quoting Apple CEO Tim Cook's remarks from the WWDC keynote, "All of this goes beyond artificial intelligence. It's personal intelligence, and it's the next big step for Apple."[7]

32.    A CNN article following the WWDC similarly spread Apple's announcements, stating that Apple Intelligence would revolutionize consumers' use of iPhones, "Apple is embracing generative AI – the buzzy form of artificial intelligence that can provide thoughtful and thorough responses to questions – through Siri . . . essentially turning it into an iPhone chatbot."[8]

33.    CNBC's write-up further highlighted Apple's statements about a partnership between Siri and Open AI's ChatGPT generative AI model, "Apple announced that Siri can tap into OpenAI's ChatGPT when needed. The company said it wanted users to be able to tap into external models. Siri will ask if you want to share your question with ChatGPT and then will return suggestions from the OpenAI chatbot. ChatGPT is also built into systemwide writing tools. So, for example, Apple said you can create a bedtime story for a child and add images created by ChatGPT."[9]

34.    As reported in *Gizmodo*: "There's a lot of big promises coming [from Apple] thanks to AI. Apple claims their new AI system will eventually let the AI perform rather complex actions, like pulling up photos and files from any of your apps. It should be able to work between apps so that it will know when your meetings are and what your plans are for that day when you ask it to send a text that helps you work around your schedule," and "Apple promises the new AI writing

---

[7] Brian Heater, *Apple Intelligence is the company's new generative AI offering*, TechCrunch (June 10, 2024), https://techcrunch.com/2024/06/10/apple-intelligence-is-the-companys-new-generative-ai-offering/.

[8] Samantha Murphy Kelly, *Everything Apple announced at its big AI event*, CNN (June 11, 2024), https://www.cnn.com/2024/06/10/tech/apple-ai-next-big-thing/index.html.

[9] Todd Haselton, *Siri will tap into OpenAI's ChatGPT and will be free*, CNBC (June 10, 2024), https://www.cnbc.com/2024/06/10/apple-wwdc-live-updates.html.

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

tools can summarize your text and add an easy 'TLDR' to the top of emails."[10]

**C.      APPLE ANNOUNCES "APPLE INTELLIGENCE" NOW AVAILABLE ACROSS ALL DEVICES**

35.      Pre-reorders for the Apple Intelligence enhanced iPhone 16 models, including the iPhone 16, iPhone 16 Plus, iPhone 16 Pro, and iPhone 16 Pro Max, opened on Friday, September 13, 2024 and these iPhones were available for in-store purchase one week later.



*Screenshot showing pre-order webpage advertising the AI enabled iPhone 16*

36.      On October 28, 2024, Apple announced that Apple Intelligence was now available on all iPhones, iPads, and Mac devices, stating, "Users can now tap into Apple Intelligence to refine their writing; summarize notifications, mail, and messages; experience a more natural and capable Siri; remove distracting objects from images with Clean Up; and more."[11]

---

[10] Kyle Barr, *Everything Announced at WWDC 2024: Apple Intelligence and a Smarter Siri*, Gizmodo (June 10, 2024), https://gizmodo.com/everything-announced-at-wwdc-2024-ios-apple-ai-1851529902.

[11] Apple Newsroom, *supra* note 3.

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

37. After the October 28, 2024 announcement, the press again went abuzz with the promise of Apple Intelligence landing on new iPhones, but cracks in Apple's plan to conceal information were also revealed. *PCMag* wrote, "Apple first unveiled Apple Intelligence at WWDC in June, promising to roll it out on Pro versions of the iPhone 15 and the iPhone 16 lineup in the fall. However, its AI tools were a no-show at September's 'Glowtime' event. Instead, Apple promised the first Apple Intelligence features in October, with 'more to come' in the months ahead. That begins today with the latest iOS software update in what's expected to be a months-long rollout."[12]



*Screenshot touting additional AI enabled functionalities available on iPhone 16*

---

[12] Emily Forlini, *Hands On With Apple Intelligence in iOS 18.1: Here's What You Get Right Now*, PCMag (Oct. 28, 2024), https://www.pcmag.com/news/apple-intelligence-launches-with-ios-181-heres-what-you-get.

38.     As reported in *PCMag*, Apple CEO Tim Cook promised: "Apple Intelligence introduces a new era for iPhone, iPad, and Mac, delivering brand-new experiences and tools that will transform what our users can accomplish" and "Apple Intelligence builds on years of innovation in AI and machine learning to put Apple's generative models at the core of our devices, giving our users a personal intelligence system that is easy to use."

39.     Fueled by these and other promises made by Tim Cook and other Apple executives well into the winter of 2024, the press continued to report and Apple purchasers continued to rely on Apple's promises regarding Apple Intelligence's functionality, enticing consumers to purchase new iPhones on the expectation that they would contain full Apple Intelligence functionality.



Siri is able to deliver intelligence that's tailored to the user and their on-device information, like locating details on an upcoming flight or keeping track of a dinner reservation.

***Screenshot from Apple's official website showing "in-app" and "on-screen" promised Siri functionality.***

### D. __APPLE'S EXPANSIVE SIRI PROMISES__

40.     Apple's promises about the capabilities of an AI enhanced SIRI functionality were extensive. The Company announced, "Siri will be able to deliver intelligence that's tailored to the user and their on-device information. For example, a user can say, 'Play that podcast that Jamie recommended,' and Siri will locate and play the episode, without the user having to remember whether it was mentioned in a text or an email. Or they could ask, 'When is Mom's flight landing?' and Siri will find the flight details and cross-reference them with real-time flight tracking to give an arrival time."[13] On closer inspection, though, Siri could do none of those things.



***Screenshot showing advanced messaging capabilities on promised Siri functionality***

41.     On February 14, 2025, after nearly ***nine months*** of steadfast promotion,[14] Apple finally admitted that features supposedly introduced in June 2024, including Siri's ability to tap

---

[13] *Id.*

[14] Liam Reilly, *Apple is pulling its AI-generated notifications for news after generating fake headlines*, CNN (Jan. 16, 2025), https://www.cnn.com/2025/01/16/media/apple-ai-news-fake-headlines/index.html.

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

into a user's personal information to answer queries and take actions, have more precise control over apps, as well as capability to see what is currently on a device's screen and use that context to better serve users will now not be released until sometime in "the coming year."[15]

### E.    APPLE FAILED TO DELIVER THE PROMISED SIRI AI FUNCTIONS

42.    When Apple demonstrated the features at WWDC using a video mock-up, it only had a barely working prototype, and Siri senior director Robby Walker recently told Apple staff that the delays were especially "ugly" because Apple had already showed off the features publicly, notably in high profile advertisements featuring celebrities.[16] "This was not one of these situations where we get to show people our plan after it's done," he said. "We showed people before."[17]

43.    According to reporting by *Bloomberg's* Mark Gurman, in the lead-up to the latest delay, Apple executives voiced strong concerns internally that the features didn't work properly— or as advertised—in their personal testing, and according to *Bloomberg*, there continues to be speculation among some within Apple's AI division that work on AI features could be scrapped altogether and that Apple may have to rebuild the functions from scratch.[18] The once-promised capabilities would then be further delayed until a next-generation Siri that Apple hopes to roll out in 2026.[19]

44.    Walker and other executives also raised doubts about even meeting the current release expectations. "To make matters worse," Walker told *Bloomberg*, Apple's marketing and communications departments wanted to promote the enhancements, and despite not being ready, the capabilities were included in a series of marketing campaigns and TV commercials starting last

---

[15] Mark Gurman, *Apple Delays Siri Upgrade Indefinitely as AI Concerns Escalate*, Bloomberg (Mar. 7, 2025), https://www.bloomberg.com/news/articles/2025-03-07/apple-confirms-delay-of-ai-infused-personalized-siri-assistant. (Apple still has not set a release date for the long-delayed capabilities, but they were initially planned for the iOS 18.4 software update in April 2025, and after revelations about issues, Apple is considering delaying or limiting at least some of the overhaul to AI capabilities until the release of iOS 18.5, which will be released in May at the earliest.)

[16] *Id.*

[17] *Id.*

[18] Mark Gurman, *Apple's Siri Chief Calls AI Delays Ugly and Embarrassing, Promises Fixes*, Bloomberg (Mar. 14, 2025), https://www.bloomberg.com/news/articles/2025-03-14/apple-s-siri-chief-calls-ai-delays-ugly-and-embarrassing-promises-fixes.

[19] *Id.*

year, including a now-removed YouTube advertising campaign featuring celebrity Bella Ramsey touting the AI capabilities of Apple's Siri voice assistant including "personal context" and "on-screen awareness through App intents" to help one schedule messages and appointments.[20]

45.    In truth, the Affected Devices do not have the capabilities as depicted by Ramsey. In addition to Defendant's first announcing their "delay" of the next generation of Siri functionality on March 7, 2025, Apple pulled this particular commercial from YouTube. With the video now removed, Apple still has failed to retract the similarly false representations in the market that began in the summer of 2024, and Defendant has not taken action that would adequately remedy consumers harmed by the Company's widespread, public deception.



**Screenshot with Representations from Apple's Now-Removed Bella Ramsey YouTube Ad**

F.    **APPLE FINALLY ACKNOWLEDGES ITS FAILED ROLLOUT**

46.    The release of long-promised AI features will take even longer. On March 7, 2025, an Apple spokesperson issued the following statement to veteran Apple analyst Johnathan Gruber, "We've . . . been working on a more personalized Siri, giving it more awareness of your personal context, as well as the ability to take action for you within and across your apps. It's going to take

---

[20] John-Anthony Disotto, *The Bella Ramsey Apple Intelligence ad that disappeared, and why Apple is now facing a false advertising lawsuit*, TechRadar (Mar. 21, 2025), https://www.techradar.com/computing/artificial-intelligence/the-bella-ramsey-apple-intelligence-ad-that-disappeared-and-why-apple-is-now-facing-a-false-advertising-lawsuit.

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

us longer than we thought to deliver on these features."[21]

47.     According to Gruber who writes the technology blog *Daring Fireball* which covers Apple's product rollouts closely, "What Apple is saying here is that these 'more personalized Siri' features are being punted from this year's OS cycle to next year's: to iOS 19 and MacOS 16."[22]

48.     Though Apple is aiming for iOS 19, it "doesn't mean that we're shipping then," Apple's senior Siri director Robby Walker told *Bloomberg*.[23] The company has several more priorities in development, and trade-offs will need to be made. "We have other commitments across Apple to other projects," Walker said, citing new software and hardware initiatives.[24] "We want to keep our commitments to those, and we understand those are now potentially more timeline-urgent than the features that have been deferred." "Customers are not expecting only these new features, but they also want a more fully rounded-out Siri," he said.[25]

49.     These continued delays demonstrate that the Company made false promises from the start regarding its Apple Intelligence capabilities, which promises kept Apple's revenues flowing from a product line that contained nearly identical technical specifications to the previous generation.

## VI.     CLASS ACTION ALLEGATIONS

50.     Pursuant to Federal Rules of Civil Procedure 23(a), (b)(2) and (b)(3), Plaintiffs bring this action individually and on behalf of the following class and subclass (the "Class"):

**Nationwide Class:**

> All residents of the United States who, from September 13, 2024 to March 7, 2025, purchased an iPhone 16, 16 Plus, 16 Pro, 16 Pro Max or 16e, for purposes other than resale.

---

[21] John Gruber, *Apple Is Delaying the 'More Personalized Siri' Apple Intelligence Features*, Daring Fireball (Mar. 7, 2025), https://daringfireball.net/2025/03/apple_is_delaying_the_more_personalized_siri_apple_intelligence_features.
[22] *Id.*
[23] *Id.*
[24] *Id.*
[25] *Id.*

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

**California Subclass:**

> All residents of California who, from September 13, 2024 to March 7, 2025, purchased an iPhone 16, 16 Plus, 16 Pro, 16 Pro Max or 16e, for purposes other than resale.

Excluded from the Class are Apple, Apple's successors or assigns, Apple's officers, directors, employees, and legal representatives, as well as any entity in which Apple has a controlling interest. Also excluded are federal, state, and/or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions; and any judicial officer presiding over this matter.[26]

51.     Members of the Class are so numerous that joinder is impracticable. Apple sold hundreds of thousands of Model 16, 16 Plus, 16 Pro, 16 Pro Max or 16e iPhones ("Affected Devices") in the United States, and Apple has records of these sales and the owners.

52.     There are numerous questions of law or fact common to the Class including, but not limited to, the following:

a.     Whether Apple's advertising and other public statements about Apple Intelligence were false and misleading;

b.     Whether Apple misrepresented and/or failed to adequately disclose that Apple Intelligence features would not be available when promised on Affected Devices;

c.     Whether the cost of Affected Devices was falsely inflated by the promised Apple Intelligence functionality that either never materialized or was significantly delayed;

d.     Whether Apple engaged in unlawful, unfair or deceptive business practices by advertising and selling the Affected Devices;

e.     Whether Apple used deceptive representations in connection with the sale of the Affected Devices in violation of Civil Code section 1750 *et seq*;

f.     Whether Apple advertised the Affected Devices with intent not to sell them as advertised in violation of Civil Code section 1750, *et seq.*;

---

[26] Plaintiffs reserve the right to amend the Class definition as warranted during the course of this litigation.

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

g.   Whether Apple's advertising and marketing of the Affected Devices are misleading in violation of Business and Professions Code section 17500, *et seq.*;

h.   Whether Apple knew or by the exercise of reasonable care should have known its advertising and marketing were and are misleading in violation of Business and Professions Code section 17500, *et seq.*

i.   Whether Apple's conduct is an unlawful, unfair or fraudulent business practice within the meaning of Business and Professions Code section 17200, *et seq.*;

j.   Whether Apple was unjustly enriched by its unlawful conduct; and

k.   Whether Plaintiffs and the Class are entitled to equitable relief, including an injunction.

53.   Plaintiffs' claims are typical of the claims of the Class. Plaintiffs and all Class Members were damaged by the same wrongful practices of Apple.

54.   Plaintiffs will fairly and adequately represent the interests of the Class Members. Plaintiffs are members of the proposed Class they seek to represent. Plaintiffs' interests are aligned with, and not antagonistic to, those of the Class. Plaintiffs have retained counsel competent and experienced in complex class action litigation.

55.   Proceeding as a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. Prosecuting separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members that would establish incompatible standards of conduct for Apple.

56.   Moreover, Apple has acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the Class as a whole. Additionally, questions of law or fact common to Class Members predominate over any questions affecting only individual Class Members. Plaintiffs know of no special difficulty maintaining this action that would preclude its maintenance as a class action.

## VII.   CHOICE OF LAW: DESIGNED BY APPLE IN CUPERTINO, CALIFORNIA

57.   By using their Devices or downloading a software update, users of the Affected Devices are presented with the iOS Software License Agreement. There are separate Software

License Agreements for each version of iOS software; however, the agreements do not differ in material terms, and provide that California law governs. For example, the Software License Agreement for iOS 18, used on the iPhone 16, provided: "This License will be governed by and construed in accordance with the laws of the State of California, excluding its conflict of law principles."

58.    To the extent they apply, the iOS Software Licensing Agreements are effective at the point of sale—as soon as the customers turn on their Devices—and are thus part of the benefit of the consumers' bargain. Without the iOS, for which there is a purported licensing agreement, the Devices simply do not work.

59.    Apple elected to have California law govern all claims and disputes concerning the common software required to operate all of the Devices at issue in this lawsuit. Accordingly, the application of California law to all of the class members' claims is fair, appropriate, and an election affirmatively made by Apple consistent in its agreements.

60.    By using their Devices, consumers are told that they agree to be bound by California law as consumers must run Apple's proprietary iOS to use their Devices.

61.    Beyond Apple's election of California law to govern the claims described herein, the State of California has a significant interest in regulating the conduct of businesses operating within its borders. California, which seeks to protect the rights and interests of California and all residents and citizens of the United States against a company headquartered and doing business in California, has a greater interest in the claims of Plaintiffs and class members than any other state or country and is most intimately concerned with the claims and outcome of this litigation.

62.    The principal place of business of Apple, located at 1 Apple Park Way (formerly 1 Infinite Loop) in Cupertino, California, is the "nerve center" of its business activities—the place where its high-level officers direct, control, and coordinate the corporation's activities, including its marketing, software development, and major policy, financial, and legal decisions.

63.    Apple's response to the allegations herein, and corporate decisions surrounding such response, were made from and in California.

64.    Apple's violations of law and breaches of duty to Plaintiffs and the Class emanated

from California, and the Devices at issue herein were designed, manufactured, and tested in California.

65.     Application of California law with respect to Plaintiffs' and Class members' claims is neither arbitrary nor fundamentally unfair because California has a state interest in the claims of the Plaintiffs and the Class based upon Apple's significant and ongoing contacts with California.

66.     Under California's choice of law principles, which are applicable to this action, the common law of California applies to the common law claims of all class members. Additionally, given California's significant interest in regulating the conduct of businesses operating within its borders, California's consumer protection laws may be applied to nonresident class members.

## VIII.   CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
**Violation of the California False Advertising Law**
**Cal. Bus. & Prof. Code § 17500, *et seq*.**
**(On Behalf of the Nationwide Class and the California Subclass)**

67.     Plaintiffs re-allege and incorporate by reference each and every allegation set forth above, as though fully set forth in this Claim for Relief.

68.     Defendant's conduct alleged herein violates California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq*., which makes it unlawful for a business to make, disseminate, or cause to be made or disseminated to the public "any statement, concerning . . . personal property . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." *Id.* § 17500.

69.     Apple's acts and practices, as described herein, have deceived and/or are likely to continue to deceive Plaintiffs, Class Members, and the public. As described throughout this Complaint, Apple misrepresented the Apple Intelligence functionalities, concealed delays in software roll=out, and misrepresented the purpose and extent of related iOS updates.

70.     By its actions, Apple disseminated uniform advertising regarding Apple Intelligence based out of California and governed by California law. The advertising was, by its nature, unfair, deceptive, untrue, and misleading within the meaning of Cal. Bus. & Prof. Code § 17500, *et seq*. Such advertisements were intended to and likely did deceive the consuming public

for the reasons detailed herein.

71.     The above-described false, misleading, and deceptive advertising Apple disseminated continues to have a likelihood to deceive in that Apple failed to disclose the true nature of Apple Intelligence functionality and related iOS software rollouts.

72.     Apple continued to misrepresent to consumers that its Apple Intelligence functionality was fully operational. Had Apple disclosed that it was not, rather than falsely advertising Apple Intelligence's non-existent properties, consumers would not have purchased or would have paid significantly less for Affected Devices.

73.     The Apple Intelligence software functionality and Affected Devices are "personal property" within the meaning of the FAL.

74.     Any express or implied representation, material omission of information, or failure to correct a past material misrepresentation or omission regarding the abilities, limitations, or value of Apple Intelligence and Affected Devices is a "statement[] concerning personal property" within the meaning of the FAL.

75.     Defendant violated the FAL by making, disseminating, and causing to be made or disseminated to the public statements about the abilities, limitations, flaws, and value of Apple Intelligence and Affected Devices that were "untrue or misleading" within the meaning of the FAL.

76.     Defendant made, disseminated, or caused to be made or disseminated such public statements in numerous forums, including but not limited to Apple's website and product pages, keynote presentations, calls and other public statements to investors, developers, conferences and other public events, television, radio, podcasts, and other publicly available media (whether print, video, audio, or other format) that republished such representations and omissions.

77.     Defendant knew or, by the exercise of reasonable care, should have known about each of those statements at or near the time they were made or disseminated were untrue and misleading in violation of California law, and at all times thereafter.

78.     Defendant knew or, by the exercise of reasonable care, should have known that each of those statements was untrue, misleading in violation of California law, and likely to

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

deceive the public at or near the time it was made or disseminated, and at all times thereafter.

79.     Plaintiffs and Class Members based their purchasing decisions on Apple's omitted material facts. The revenues to Apple attributable to the product sold in those false and misleading advertisements amount to tens or hundreds of millions of dollars. Plaintiffs and Class Members were injured in fact and lost money and property as a result.

80.     Unless Defendant are enjoined from engaging in the conduct alleged herein that violates the FAL, members of the consuming public will be further harmed by that conduct.

81.     As a result of Defendant's FAL violations and the harm caused thereby, Plaintiffs and Class Members lost money and are entitled to and seek (a) injunctive relief to protect the consuming public by prohibiting Apple from engaging in its past and ongoing acts, omissions, and conduct that violate the FAL; (b) restitution of the full value of all monies and other consideration that Plaintiffs and Class Members paid Defendant for the purchase or lease of Apple Intelligence software or Affected Devices, which Defendant continues to wrongfully retain, including any diminished value of Plaintiffs' and Class Members' Affected Devices and disgorgement of the profits Defendant derived from their wrongful conduct; (c) an award of reasonable attorneys' fees under Cal. Code Civ. Proc. § 1021.5 and any other applicable law; and (d) all other available relief prayed for below.

## SECOND CLAIM FOR RELIEF
**Violation of the California Consumer Legal Remedies Act**
**Cal. Civ. Code § 1750, *et seq.***
**(On Behalf of the Nationwide Class and the California Subclass)**

82.     Plaintiffs re-allege and incorporate by reference each and every allegation set forth above, as though fully set forth in this Claim for Relief.

83.     The California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*, makes unlawful certain "unfair methods of competition and unfair or deceptive acts or practices . . . undertaken by any person in a transaction intended to result or that results in the sale or lease of goods or service to any consumer." *Id.* § 1770(a).

84.     The CLRA is a comprehensive statutory scheme that is to be liberally construed to protect consumers against unfair and deceptive business practices in connection with the conduct

of businesses providing goods, property, or services to consumers primarily for personal, family, or household use.

85.    In accordance with the liberal application and construction of the CLRA, application of the CLRA to all class members is appropriate, given that Apple's conduct as described herein originated from California, the Devices and iOS code containing Apple Intelligence functionality were designed and originated in California, and Apple's uniform iOS Software License Agreement provides that California law shall apply.

86.    Apple's uniform iOS software License Agreement governs the reach of the Class's claims because Apple's violations of the CLRA were caused, in part, by the installation of certain operating software containing Apple Intelligence features and functionality that degraded Affected Devices' device performance and negatively impacted users' experiences.

87.    Defendant is a "person" under the CLRA. *See id.* § 1761(c).

88.    Plaintiffs and all Class Members are "consumers" under the CLRA because they are all individuals who acquired, by purchase or lease, Affected Devices with Apple Intelligence functionality for personal, family, or household purposes. *See id.* § 1761(d).

89.    The purchase or lease of Apple Intelligence and/or Affected Devices is a "transaction" under the CLRA. *See id.* § 1761(e).

90.    Apple Intelligence and Affected Devices are "goods" under the CLRA. *See id.* § 1761(a).

91.    In selling or leasing Apple Intelligence and Affected Devices to Plaintiffs and Class Members, Defendant made an express or implied promise to provide future Apple Intelligence software development, future Apple Intelligence software updates, and other work or labor that constitutes "services" under the CLRA. *See id.* § 1761(b).

92.    Apple's acts and practices were intended to and did result in the sales of products and services to Plaintiffs and the Class Members in violation of Civil Code § 1770, including:

       a.    Representing that goods or services have characteristics that they do not have;

       b.    Representing that goods or services are of a particular standard, quality, or

grade when they are not;

    c.   Advertising goods or services with intent not to sell them as advertised; and

    d.   Representing that the subject of a transaction has been supplied in

        accordance with a previous representation when it has not.

93.    Apple's representations and omissions were material because they were likely to deceive reasonable consumers.

94.    Defendant's wrongful acts, practices, and conduct alleged herein—including but not limited to their false, misleading, and deceptive marketing, representations, and omissions regarding the present and likely future abilities, limitations, flaws, and value of Apple Intelligence and Affected Devices and related technology were a substantial factor in Plaintiffs' and Class Members' decisions to purchase or lease Affected Devices, and their decisions to pay hundreds of dollars more for upgrades or new phones with the promised technology.

95.    Plaintiffs' CLRA venue affidavit is filed concurrently with this Complaint, in accordance with Cal. Civ. Code § 1780(d).

96.    Unless Defendant is enjoined from engaging in conduct alleged herein that violates the CLRA, members of the consuming public will be further harmed by that conduct.

97.    As a result of Defendant's CLRA violations and the harm caused thereby, Plaintiffs and Class Members are entitled to and seek: (a) injunctive relief to protect the consuming public by prohibiting Defendant from engaging in its past and ongoing acts, omissions, practices, and conduct that violate the CLRA; (b) all monetary and non-monetary relief allowed by law, including damages and punitive damages; (c) an award of reasonable attorneys' fees under Cal. Civ. Code § 1780(e), Cal. Code Civ. Proc. § 1021.5, and any other applicable law; and (d) all other available relief prayed for below.

### THIRD CLAIM FOR RELIEF
**Violation of California's Unfair Competition Law**
**Cal. Bus. & Prof. Code § 17200, *et seq*.**
**(On Behalf of the Nationwide Class and the California Subclass)**

98.    Plaintiffs re-allege and incorporate by reference each and every allegation set forth above, as though fully set forth in this Claim for Relief.

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

99.    California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200, *et seq.*, "UCL") is designed to protect consumers from unlawful, unfair, or fraudulent business acts or practices, including the use of any deception, fraud, false pretense, misrepresentation, or the concealment, suppression, or omission of any material fact.

100.    In accordance with the liberal application and construction of the UCL, application of the UCL to all Class Members is appropriate, given that Apple's conduct as described herein originated from California, Affected Devices and Apple Intelligence, and related iOS software were designed and originated in California, and Apple's uniform iOS Software License Agreement provides that California law shall apply.

101.    Apple's uniform iOS software License Agreement governs the reach of the Class's claims because Apple's violations of the UCL, FAL, and CLRA were caused, in part, by the installation of certain operating software containing Apple Intelligence features and functionality that degraded Affected Devices' device performance and negatively impacted users' experiences.

102.    Apple has engaged, and continues to engage, in unfair business practices with regard to updates to its Apple Intelligence software. Apple designed Apple Intelligence in a manner that materially diminishes the speed and performance of the Affected Devices in addition to significantly diminishing users' experiences with the Affected Phone.

103.    Apple is a "person" as defined by Cal. Bus & Prof. Code § 17201.

104.    Apple violated Cal. Bus & Prof. Code § 17200, *et seq.* by engaging in unlawful, unfair, and deceptive acts and practices.

105.    Apple's "unfair" acts and practices include:

    a.    Knowingly designing, developing, manufacturing, advertising, and selling Affected Devices with a significant defect, reduced Apple Intelligence functionality, that resulted in the Affected Devices not operating as intended, represented, or advertised under normal usage;

    b.    Developing software updates that merely hide the aforementioned defect, and/or resulting in Affected Devices operating at slower speeds or degraded performance levels that intended, represented, or advertised under normal

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

usage;

    c.  Concealing material information from consumers regarding the rollout of Apple Intelligence functionalities and updates to operating software, so that consumers would not nor could not know that Apple Intelligence was not fully operational nor negatively impacted Affected Devices' device performance;

    d.  Using uniform, deceptive practices, requiring consumers to spend additional money on replacement Affected Devices as a result of the defect.

106.    Apple has engaged in "unlawful" business practices by violating multiple laws, including the California False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq*., ("FAL"), the California Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1780, *et seq*., and California common law.

107.    Apple violated § 17200's prohibition against unfair conduct by failing to inform its customers about the defect in the Affected Devices; engaging in a pattern or practice of concealing those facts and urging its customers to install regular updates to the iOS software to receive partial Apple Intelligence updates, thereby depriving owners of Affected Devices performance of those devices that existed at the time of purchase. This conduct is substantially injurious to consumers, offends public policy is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct—diminishing and crippling expected—outweighs any alleged benefit. Specifically, the utility gained by "upgrading" to software that included Apple Intelligence was outweighed by the diminishment of the device functionality. Apple engaged in this conduct at the expense of its customers' rights (and customers lost money) when other lawful alternatives were available, such as providing customers' with full information about the Affected Devices, Apple Intelligence functionality, iOS software updates, and/or offering replacements to customers.

108.    Apple engaged in this conduct to gain an unfair commercial advantage over its competitors, seeking to avoid public knowledge of the defect in its Apple Intelligence software suite, to avoid damage to its sales or reputation. It withheld critical and material information from Plaintiffs and Class Members, competitors, and the marketplace—all to its unfair competitive

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

advantage.

109.     Apple violated § 17200's prohibition against engaging in unlawful acts and practices by engaging in false and misleading advertising and by omitting material facts from purchasers of Affected Devices. As alleged more fully herein, Apple's marketing and sale of Affected Devices, and more specifically its failure to inform customers of the incomplete software functionality rollout of Apple Intelligence and resulting diminished performance impact of incomplete software updates would have on those Affected Devices, violated Cal. Civ. Code § 1750, *et seq.*, common law, and other statutory violations as alleged herein. Plaintiffs reserve the right to allege other violations of the law which constitute other unlawful business acts and practices. Apple's conduct is ongoing and continues to this date.

110.     Apple violated § 17200's prohibition against unfair conduct by failing to inform its customers about the defect in the Affected Devices; engaging in a pattern or practice of concealing those facts and urging its customers to install regular updates to the iOS software to receive partial Apple Intelligence updates, thereby depriving owners of Affected Devices performance of those devices that existed at the time of purchase. This conduct is substantially injurious to consumers, offends public policy, is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct—diminishing and crippling expected device performance—outweighs any alleged benefits. Specifically, the utility gained by "upgrading" to iPhones with Apple Intelligence capabilities was outweighed by the diminishment of the device functionality. Apple engaged in this conduct at the expense of its customers' rights when other, lawful alternatives were available (such as providing customers' with full information about the Affected Devices and delayed Apple Intelligence rollout).

111.     Apple failed to inform consumers of the reasons for the intentionally implemented delay in software rollout and sub-par performance and user experience. Apple also failed to inform consumers that there would be delays in Apple Intelligence software functionality with material impacts on Affected Devices or users' experience(s) with the device(s). Apple's conduct is unfair because it was substantially injurious to consumers, and is immoral, unethical, oppressive, or unscrupulous. Apple's conduct is not outweighed by any countervailing benefits to consumers.

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

112.     Apple's conduct is fraudulent because Apple represented that the Apple Intelligence software updates contained expansive generative AI improvements, material improvements to Siri capabilities, and concealed that the roll-out of updates would slow down or be non-existent after initial release.

113.     Apple's representations and omissions—all which emanated from California—were material because they were likely to deceive reasonable consumers.

114.     California law prohibits unauthorized computer access and fraud pursuant to Cal. Penal Code § 502.

115.     As a result of Apple's installation of incomplete Apple Intelligence software functionality on Plaintiff's and Class Members' Affected Devices, Apple knowingly accessed and without permission altered, damaged, deleted, destroyed and otherwise used any data stored on Plaintiff's and Class Members' devices.

116.     Apple accessed and without permission altered and used data on Plaintiffs and Class Members' devices to execute a scheme or artifice to defraud Plaintiffs and the Class Members' by, among other things, maintaining market share, convincing the Plaintiffs and Class Members to purchase new devices, and to otherwise ensure that Plaintiffs and Class Members would not discover Apple's underlying fraud regarding its omissions and misrepresentations regarding Affected Devices. As a result, Apple violated Cal. Penal Code § 502.

117.     The sluggish rollout of Apple Intelligence functionality led to the deterioration of Affected Devices, driving customers to purchase new devices. Customers would not have outlaid the additional costs had they known the truth and had Apple not concealed the Apple Intelligence deficiencies.

118.     As a direct and proximate result of Apple's unfair, unlawful, and fraudulent acts and practices, Plaintiffs and Class Members were damaged and lost money or property, including from not receiving the benefit of their bargain in purchasing the Affected Devices as well as increased time and expense in dealing with device performance issues.

119.     Apple's conduct and the harm it caused, and continues to cause, is not reasonably avoidable by Plaintiffs and the Class Members. Apple knew or had reason to know that Plaintiffs

and the Class Members could not have reasonably known or discovered the existence of software development delays or the subsequent performance problems that a delayed roll-out of Apple Intelligence functionality would cause.

120.    Had Plaintiffs and the Class Members known that delayed Apple Intelligence would substantially and negatively impact and delay the performance of the Affected Devices, they would not have purchased phones promising that functionality.

121.    Apple acted intentionally, knowingly, and maliciously to violate California Unfair Competition Law, and recklessly disregarded Plaintiffs and Class Members' rights, injuring Plaintiffs and Class Members. Apple's knowledge of the Apple Intelligence functionality deficiencies, device performance issues, and release of software updates put Defendant on notice that the Affected Devices were not as Apple advertised.

122.    Pursuant to Cal. Bus. & Prof. Code § 17203, Plaintiffs and Class Members seek all monetary and non-monetary relief allowed by law. In addition Plaintiffs and Class Members seek an order: (a) requiring Apple to cease the deceptive and unfair business practices alleged herein; (b) requiring Apple to restore to Plaintiffs and the Class Members any money acquired by means of the deceptive and unfair business practices, including restitution of all profits stemming from Apple's unfair, unlawful, and fraudulent business practices; and (c) awarding reasonable costs and attorneys' fees pursuant to Cal. Civ. Code § 1021.5; and (d) any other appropriate injunctive or equitable relief.

**FOURTH CLAIM FOR RELIEF**
**Fraud and Deceit**
**(On Behalf of the Nationwide Class and the California Subclass)**

123.    Plaintiffs re-allege and incorporate by reference each and every allegation set forth above, as though fully set forth in this Claim for Relief.

124.    Apple affirmatively misrepresented and made false and materially misleading statements regarding the capabilities of the Affected Devices when selling and marketing them.

125.    Apple knew that its representations were false and misleading at the time they were made.

126.    Apple also knew that its representations regarding the functionality of Apple

Intelligence on the Affected Devices were material, and that a reasonable consumer would rely upon Apple's misrepresentations in deciding whether to purchase Affected Devices.

127.    Plaintiffs and members of the Class did not and could not have known about the falsity of Apple's statements.

128.    Plaintiffs and members of the Class relied upon Apple's false and misleading statements as alleged herein, and Plaintiffs' and Class members' reliance on Apple's materially false and misleading statements was reasonable and justified.

129.    Plaintiffs and the Class Members relied on the representation that the Affected Devices would contain the full suite of Apple Intelligence functionalities, including personalized AI-enabled Siri functionalities. Apple concealed that Apple Intelligence was behind schedule and incomplete and was incomplete when released and failed to disclose that such an incomplete release may throttle processors speeds and alter battery conditions.

130.    Plaintiffs and the Class Members reasonably relied on the representations and omissions made in the software update descriptions and notifications provided by Apple. Prior to purchasing Affected Devices, Plaintiffs and the Class Members did not have access to material facts informing them of the delayed Apple Intelligence roll-out.

131.    Had the truth been known, Plaintiffs and the Class Members would not have purchased or upgraded to the iPhone 16 line of phones because the functioning of the Affected Devices was not as advertised.

132.    As a direct result of Apple's deception, Plaintiffs and the Class Members were harmed. By purchasing Affected Devices, Plaintiffs and Class Members sustained actual losses and damages caused by Apple's false representations regarding Apple Intelligence and the Affected Devices.

133.    Apple's wrongful acts were done maliciously, oppressively, deliberately, and with intent to defraud Plaintiffs and the Class Members. As a result, Plaintiffs and the Class Members seek punitive damages.

/ / /

/ / /

### FIFTH CLAIM FOR RELIEF
**Negligent Misrepresentation**
**(On Behalf of the Nationwide Class and the California Subclass)**

134.    Plaintiffs re-allege and incorporate by reference each and every allegation set forth above, as though fully set forth in this Claim for Relief.

135.    Apple had a duty to Plaintiff and the Class to exercise care in the developing, marketing, and sale of Apple Intelligence and the Affected Devices.

136.    Apple breached its duties through its false advertising and promotion of Apple Intelligence and the functionalities they would have on the Affected Devices.

137.    Apple knew or should have known that the qualities and characteristics of the touted products were not as advertised and represented by Apple and its agents.

138.    As a direct result of Apple's conduct, Plaintiffs and the Class Members were harmed. By purchasing Affected Devices, Plaintiffs and Class Members sustained actual losses and damages caused by Apple's false representations regarding Apple Intelligence and the Affected Devices.

### SIXTH CLAIM FOR RELIEF
**Breach of Contract**
**(On Behalf of the Nationwide Class and the California Subclass)**

139.    Plaintiffs re-allege and incorporate by reference each and every allegation set forth above, as though fully set forth in this Claim for Relief.

140.    Defendant expressly warranted that the Affected Devices would perform as advertised. Defendant's claims regarding the Affected Devices constituted an affirmation of fact, promise, and/or description of the goods that became part of the basis of the bargain and created an express warranty that the goods would conform to the stated promise. Plaintiffs and the Class Members placed importance on Defendant's claims.

141.    All conditions precedent to Defendant's liability under this contract have been performed by Plaintiffs and the Class Members.

142.    Defendant breached the terms of the contract, including the express warranties, with

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

1    Plaintiffs and the Class Members, by not providing Affected Devices that conform to the

2    advertising and marketing claims.

3        143.    As a result of Defendant's breach of contract, Plaintiffs and the Class Members

4    have been damaged in the amount to be determined at trial.

5                          **SEVENTH CLAIM FOR RELIEF**
                  **Breach of Implied Warranty of Merchantability**
6          **(On Behalf of the Nationwide Class and the California Subclass)**

7

8        144.    Plaintiffs re-allege and incorporate by reference each and every allegation set forth

9    above, as though fully set forth in this Claim for Relief.

10       145.    Unless excluded or modified, a warranty that a good shall be merchantable is

11   implied in a contract for their sale, if the seller is a merchant with respect to goods of that kind.

12       146.    Defendant is a merchant with respect to products such as the Affected Devices at

13   issue.

14       147.    In order to be merchantable, goods must conform to the promises or affirmations of

15   fact made in the advertising of the product.

16       148.    Defendant breached the implied warranty of merchantability to Plaintiffs and Class

17   Members in its representations that the Affected Devices contained the Apple Intelligence and Siri

18   capabilities advertised, when those representations were actually false.

19       149.    As a result of Defendant's misleading conduct, Plaintiffs and Class Members did

20   not receive merchantable goods as impliedly warranted by Defendant.

21       150.    Defendant did not exclude or modify the Product's implied warranty of

22   merchantability.

23       151.    As a proximate result of Defendant's breach of its implied warranty, Plaintiff and

24   Class Members incurred damages.

25       152.    Plaintiffs and Class Members were damaged as a result of Defendant's failure to

26   comply with its obligations under the implied warranty, since Plaintiffs and the Class paid for the

27   product, the Affected Devices, that did not have the promised quality and nature, paid a premium

28   for the Affected Devices, when they could have instead purchased other less expensive

smartphones or other products, and Plaintiffs and Class Members lost the opportunity to purchase similar products that provided the capabilities advertised.

153.    As a result of Defendant's breach of contract, Plaintiff and the Class Members have been damaged in an amount to be determined at trial.

**EIGHTH CLAIM FOR RELIEF**
**Unjust Enrichment**
**(On Behalf of the Nationwide Class and the California Subclass)**

154.    Plaintiffs re-allege and incorporate by reference each and every allegation set forth above, as though fully set forth in this Claim for Relief.

155.    To the extent required by law, this cause of action is alleged in the alternative to legal claims, as permitted under Fed. R. Civ. P. 8.

156.    Plaintiffs and Class Members paid Defendant the value of Apple Intelligence and Affected Devices that would make their phones fully functional with AI technology at the time of purchase or lease, or within a reasonably short period thereafter.

157.    In exchange, Defendant provided Plaintiffs and Class Members with Affected Devices and Apple Intelligence functionality that could not meet Plaintiff's and Class Members' reasonable expectations created by Defendant's marketing, labelling, and other representations.

158.    Defendant knew or should have known that the Apple Intelligence and Affected Devices could not meet Plaintiffs' and Class Members' reasonable expectations created by Defendant's marketing, labelling, and/or other representations.

159.    As such, Plaintiffs and Class Members conferred value upon Defendant which would be unjust for Defendant to retain.

160.    As a direct and proximate result of Defendant's unjust enrichment, Plaintiffs and Class Members have suffered and continue to suffer economic and other harms.

## IX.  PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class, respectfully requests that the Court:

A.  Determine that this action may be maintained as a class action pursuant to Federal Rule of Civil Procedure 23(a), (b)(2) and (b)(3);

B.  Direct that reasonable notice of this action, as provided by Federal Rule of Civil Procedure 23(c)(2), be given to the Class;

C.  Appoint Plaintiffs as the Class Representatives;

D.  Appoint Plaintiffs' counsel as Class Counsel;

E.  Enter judgment against Defendant and in favor of Plaintiffs and the Class;

F.  Adjudge and decree that the acts alleged herein by Plaintiffs and the Class against Defendant constitute a violation of California law and Apple was unjustly enriched thereby;

G.  Award all compensatory and statutory damages to Plaintiffs and the Class in an amount to be determined at trial;

H.  Award restitution, including the disgorgement of all money or other financial benefit realized by Apple as a result of its wrongful conduct, payable to Plaintiffs and the Class Members;

I.  Award punitive damages, including treble and/or exemplary damages, in an appropriate amount;

J.  Enter an injunction permanently barring continuation of the conduct complained of herein;

K.  Award Plaintiffs and the Class the costs incurred in this action together with reasonable attorneys' fees and expenses, including any necessary expert fees as well as pre-judgment and post-judgment interest; and

L.  Grant such other and further relief as is necessary to correct for the effects of Defendant's unlawful conduct and as the Court deems just and proper.

/ / /

/ / /

/ / /

1

## X. **<u>DEMAND FOR JURY TRIAL</u>**

2

Plaintiffs hereby demand a trial by jury on all issues so triable.

3

4

Dated: April 9, 2025                              **COTCHETT, PITRE & McCARTHY, LLP**

5

By:     */s/ Brian Danitz*

6

BRIAN DANITZ
JOSEPH W. COTCHETT

7

KARIN B. SWOPE
GIA JUNG

8

VASTI S. MONTIEL
PIERCE H. STANLEY

9

10

*Attorneys for Plaintiffs Corey Martin and
Tyshaun Butler and the Proposed Class*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP